UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **MEDALLION TRANSPORT & LOGISTICS, LLC,** § § § § | | |
| Plaintiff, § § | | |
| v. § § | Case No. 2:16cv1016 | |
| **AIG CLAIMS, INC., GRANITE STATE INSURANCE COMPANY AND JAY CARMAN** § § § § § | JURY | |
| Defendants. § § | | |

## SECOND AMENDED COMPLAINT

Plaintiff Medallion Transport & Logistics, LLC hereby files this Second Amended Complaint against Defendants AIG Claims, Inc., Granite State Insurance Company, and Jay Carman and in support of its claims alleges the following:

### PARTIES

1.   Plaintiff Medallion Transport & Logistics, LLC ("Medallion") is a North Carolina limited liability company with its principal place of business in Mooresville, North Carolina.

2.   Defendant AIG Claims, Inc. ("AIG Claims") is a subsidiary and the claims servicing company of American International Group, Inc.'s ("AIG") property casualty insurance product lines. It is organized under the laws of the State of Delaware, with its principal place of business in New York. AIG Claims is authorized to engage in the business in Texas and may be served with process through its registered agent, United States Corp Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

1

3. Defendant Granite State Insurance Company ("Granite State") is a fire and casualty company, organized under the laws of the State of Illinois, with its principal place of business at in New York. Granite State is authorized to engage in the insurance business in Texas and has previously been served with process through its registered agent and has filed an answer in this case.

4. Upon information and belief, Jay Carman is the Complex Director for AIG Claims and a Texas resident. He has been previously served with process and has filed an answer in this case.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action because complete diversity exists among the parties as defined by 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. More specifically, Plaintiff is a citizen of North Carolina. Defendant AIG Claims is a citizen of both Delaware (place of incorporation) and New York (principal place of business). Defendant Granite State is a citizen of Illinois (place of incorporation) and New York (principal place of business). Defendant Carman is a Texas resident.

6. This Court has personal jurisdiction over the Defendants because the Defendants engage in intentional, continuous and systematic contacts within Texas, and within the Eastern District of Texas and have committed acts within this District giving rise to this action. Defendants offer and provide services and support to actual and prospective customers in this District. Defendants AIG Claims and Granite State are registered to engage in business in the State of Texas.

7. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(a)(2), because all or a substantial part of the events or omissions giving rise to Medallion's claims occurred in this District.

## FACTS

8. Medallion is a multi-modal transportation service provider with agent and office locations throughout the Southeast and Midwest, including multiple locations in the state of Texas.

9. American International Group, Inc. is a multi-national insurance organization that conducts its insurance business through various subsidiaries. American International Group, Inc conducts its property and casualty insurance business through its wholly-owned subsidiary AIG Property Casualty Inc, which at the time of the accident which gives rise to this suit, was known as Chartis USA, Inc. At all times material to this action, the Defendant Granite State Insurance Company has operated as a subsidiary of Chartis/AIG Property Casualty U.S., Inc., and has engaged in the business of insurance by issuing the policy that is the subject of this suit.

10. The Defendant AIG Claims, Inc. is also a wholly-owned subsidiary of AIG Property Casualty Inc. which provides claims management services for the Defendant Granite State and other insurance company subsidiaries of AIG Property Casualty Inc. Formerly operating under the name Chartis Claims, Inc. at the time of the accident that gives rise to this suit, AIG Claims engages in the business of insurance by investigation, processing, evaluating, managing the defense, and approving, and denying claims, and on behalf of the Defendant Granite State, was responsible for the claim management decisions regarding the claim which is the subject of this suit. References to "AIG Claims" in this pleading are intended to include Chartis Claims, Inc.

11. The Defendant Carman is the "Complex Director" employed by AIG Claims and in this capacity engaged in the business of insurance by investigation, processing, evaluating,

managing the defense, and approving, and denying claims. The Defendant Carman was at least one of the individuals ultimately responsible for the decisions regarding claim management in this matter on behalf of the Defendants Granite State and AIG Claims that give rise to this suit.

12. At all times material to this case, the Defendants AIG Claims and Jay Carman were acting on behalf of the Defendant Granite State.

13. Granite State issued policy number TP9880 491 to Medallion, effective December 1, 2010 to February 1, 2012 (the "Policy"). The Policy provided Medallion coverage of up to $2,000,000 for liability caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto."

14. On April 4, 2011, Brandi Williams ("Williams") was driving on U.S. Highway 259 in Lone Star, Texas, when her vehicle was struck by a long-distance trucking trailer being driven by Tillerd Ardean Smith ("Smith"), owned by Tony Rushing d/b/a Rushing Transport Services, Inc. ("Rushing") and carrying cargo on behalf of Medallion (the "Accident"). On the same day as the Accident, Medallion provided notice of the Accident to AIG Claims. AIG accepted coverage for the Accident on or around April 6, 2011 and set the indemnity reserve for the Accident at $15,000.

15. On February 22, 2012, Medallion was served with a lawsuit filed by Williams in the District Court for Morris County, Texas (the "Williams Litigation"). On the same day, it was served with the Williams Litigation, Medallion provided a copy of the pleadings to AIG Claims. The Plaintiff expected that, in accordance with the insurance contract, the Defendants would employ counsel to investigate the liability and extent of damages, and in the event that the facts established that Medallion's liability was reasonably certain, to make every effort to promptly resolve the Medallion's liability within the policy limits.

16.     Pursuant to the Policy, AIG Claims hired the firm of Tucker, Taunton, Snyder & Slade, P.C., of Houston, Texas to defend Medallion in the Williams Litigation on or around February 28, 2012.

17.     In the Williams Litigation, Williams alleged that Smith, Medallion and Rushing were negligent with respect to the Accident, including with respect to Medallion's alleged negligence in the supervision and training of Smith. Williams alleged that as a result of the Accident she suffered severe injuries to her spine, which led to numerous medical procedures, hospitalizations and a spinal surgery. At the time of the Accident, Williams was working as a Registered Nurse at a Longview Hospital. Because of the injuries sustained in the Accident, Williams alleged she had obtained a medical opinion that she could never return to work as a nurse, her chosen profession. Williams offered experts and other witnesses, including her treating physician, to testify that her medical damages and lost earnings were $1,572,750. On September 24, 2013, trial was set for the Williams Litigation for December 16, 2013.

18.     On October 2, 2013, AIG Claims increased its reserves to only $125,000, despite knowing that Williams had not worked since the Accident and being advised by its claims adjuster that the case had a potential for serious exposure.

19.     On October 17, 2013, Williams sent a settlement offer to Wade Reese, the attorney hired to defend Medallion in the Williams Lawsuit (the "First Settlement Demand"). Williams' counsel described in detail the severity and extent of Williams' injuries, medical expenses, and lost earnings, and demanded a full policy-limits settlement of what he believed to be $2 million. The First Settlement Demand also provided, "[h]owever, in the event for some reason there is an error in this statement, our offer is for whatever the policy limits actually are. In exchange for a full policy-limits settlement, Williams' counsel offered a "full and final release, releasing all

claims and causes of action along with discharging any and all subrogations and liens of any kind whatsoever." The First Settlement Demand expressly invoked an insurance carrier's obligation to accept reasonable settlement demands within policy limits as expressed in *G.A. Stowers Furniture Co. v. American Indemnity*, 15 S.W.2d 544 (Tex. Comm. App. 1929, no writ), and included a deadline to accept the demand of November 5, 2013.

20. On October 21, 2013, AIG Claims received a Combined Pre-Trial Report and Agreed to Litigation Plan from Reese, counsel hired to represent Medallion in the Williams lawsuit. Without even employing experts regarding liability or damages, counsel advised that Medallion's liability was reasonably certain and that the verdict may exceed the policy limits demanded by Williams in settlement. Specifically, the counsel hired by AIG Claims to defend Medallion advised AIG Claims that there were no facts available to dispute Smith and Medallion's liability for the Accident and forecast a verdict in favor of the Plaintiff to be in a range between $1,750,000 and $3,000,000.

21. Upon receiving Reese's Combined Pre-Trial Report, concerned that AIG Claims was not taking the Williams litigation seriously, Medallion was forced to hire counsel at its own expense in an effort to protect itself from AIG Claim's failure to resolve the Williams Litigation within the policy limits.

22. On October 31, 2013, counsel employed by Medallion sent AIG Claims a letter demanding that the insurance carrier provide assurances that it would protect Medallion from any excess verdict because of the insurance carrier's refusal to settle the matter for the policy limits, or even provide a reasonable settlement offer.

23. Also, on October 31, 2013, AIG Claims received a Supplement to the Combined Pre-Trial Report and Agreed to Litigation Plan from Reese, which among other things reminded AIG Claims of the First Settlement Demand and that it was set to expire on November 5, 2013.

24. Despite the evaluation of counsel hired to defend Medallion that there was no defense to liability and that Williams' damages in the event of a verdict in her favor were likely between $1,750,000 to $3,000,000, AIG Claims rejected the First Settlement Demand and made a counteroffer of only $250,000. On November 6, 2013, the Williams Litigation was mediated unsuccessfully. AIG Claims did not consider retaining any experts in the matter until November 5, 2013, after the deadline for disclosure of experts had passed.

25. On or around November 11, 2013, AIG Claims assigned Jay Carman to assume responsibility for managing the Williams Litigation.

26. On December 9, 2013, Williams' counsel sent AIG Claims and Carman a second offer to provide a full and final release, releasing all claims and causes of action against Smith and Medallion for the policy limits, or $2,000,000 (the "Second Settlement Demand"). This letter provided that the settlement offer would expire and be withdrawn if not accepted by December 11, 2013.

27. Despite its knowledge that there was no defense to liability, that Williams' damages in the event of a verdict in her favor were likely between $1,750,000 to $3,000,000, and that the insured was precluded from retaining experts, on December 11, 2013, AIG Claims and Carman, acting on behalf of Granite State, rejected Williams' policy limits settlement offer and instead made a counter settlement offer of only $350,000.

28. On December 16, 2013, the Williams trial began in the 71st Judicial District Court for Harrison County, Texas. During trial, after the testimony of Williams' treating physician, AIG Claims and Carman offered $500,000 to settle the case, which was rejected by Williams.

29. On December 19, 2013, the jury in the Williams case returned a verdict for Williams, and as counsel hired by AIG Claims to defend the case had predicted, finding Smith's and Medallion's negligence was 100% of the proximate cause of damages to Williams in the total amount of $3,865,101 (the "Excess Verdict").

30. On January 6, 2014, counsel for Medallion sent a letter to AIG Claims demanding that it provide assurances that the insurance carrier would provide protection to Medallion from the Excess Verdict because it had failed to settle the matter within the policy limits and would post the entire amount of bond due to appeal the verdict. AIG Claims failed to respond to Medallion's January 6, 2014 letter.

31. On February 13, 2014, a final judgment was entered in favor of Williams and against Medallion in the amount of $3,865,101.00, along with approximately $110,000 in pre-judgment interest and $7,800 in court costs.

32. On March 14, 2014, counsel for Medallion again requested that AIG Claims provide assurances that it would post the entire amount of supersedeas bond required to appeal the Excess Verdict.

33. Eventually, on April 8, 2014, AIG Claims and Carman offered to settle the Williams' claim for the amount remaining under the policy limits of $1,975,443.32, which Williams' counsel rejected.

34. On May 14, 2014, Medallion appealed the Williams verdict.

35. On May 28, 2014, AIG Claims finally agreed to post the supersedeas bond required for the appeal.

36. On March 2, 2015, counsel for Medallion sent AIG Claims another demand that it act in good faith and settle the Williams Lawsuit and provide assurances that AIG Claims intended to honor its obligation for payment of a verdict or settlement in excess of the policy limits because of its failure to accept either the First or Second Settlement Demands and bad faith handling of the Williams Lawsuit. AIG Claims failed to respond to Medallion's March 2, 2015 letter. On May 28, 2015, Medallion sent AIG Claims a second letter demanding AIG Claims act in good faith and settle the Williams Lawsuit and provide assurances that AIG Claims intended to honor its obligation for payment of a verdict or settlement in excess of the policy limits because of its failure to accept either the First or Second Settlement Demands and general bad faith handling of the Williams Lawsuit. AIG Claims failed to respond to Medallion's May 28, 2015 letter or otherwise provide adequate assurances that it was responsible for any verdict in excess of the $2,000,000 policy limit.

37. On May 29, 2015, the Excess Verdict was overturned on appeal based upon an improper jury instruction given by the Court, and the matter was remanded for a second trial.

38. After the Excess Verdict was overturned, and after two more Court-ordered mediations, Williams' counsel made a non-negotiable final demand to settle the Williams litigation for the sum of $3,000,000. AIG Claims refused to offer more than $2,800,000 toward settlement, which was rejected by Williams' counsel. Medallion was then forced to contribute $200,000 of its own funds to complete the settlement and to avoid the likelihood of a future verdict in excess of the policy limits that could be catastrophic to Medallion's business.

## COUNT I:  NEGLIGENT FAILURE TO SETTLE ("STOWERS DOCTRINE")
### (Against Defendant Granite State)

39. As described above, the Plaintiff Medallion was insured under an insurance policy issued by Defendant Granite State, which covered and was intended to protect Medallion from the risk of liability for claims such as were asserted in the Williams Litigation. As Medallion's insurance company, Granite State owed a duty to the Medallion to accept reasonable settlement offers within the policy limits, and to protect Medallion from the possibility of a judgement in excess of the policy limits. By reason of an arrangement or contract between Defendant Granite State and Defendant AIG Claims, AIG Claims and Carman (an employee of AIG Claims who actually managed the Williams Litigation) had the authority to act as Granite State's agents in managing the Williams Litigation claim on behalf of Granite State. AIG Claims and Carman had the authority of Granite State to adjust the Williams claim, including with respect to the investigation, evaluation, hiring counsel and managing the defense, and potential resolution of the Williams claim. AIG Claims' authority included the authority to reject or accept settlement demands advanced with respect to the Williams claim.

40. As set forth above, AIG Claims, acting on behalf of Granite State, had at least two opportunities to settle and resolve all claims against its insured before trial for a sum within the policy limits. The settlement offers which were rejected by AIG Claims or Carman before trial would have obtained a complete and final release of its insured, Medallion.

41. The Settlement Demands that were rejected by AIG Claims or Carman, acting on behalf of Granite State, before trial were on terms that an ordinarily prudent insurer would have accepted, considering the likelihood and degree of Medallion's potential exposure to an excess judgment. The counsel appointed to defend Medallion by AIG Claims had indicated that Williams

was likely to prevail on liability and that the range of the jury verdict could exceed the Policy's limits. At the time the Settlement demands were made, after discovery had concluded and before trial, a reasonably prudent liability insurance carrier, in the same or similar position as Granite State would have paid the remaining available policy limits to resolve the claims asserted against Medallion in the Williams Litigation.

42. AIG Claims or Carman's, refusal. acting on behalf of Granite State. to accept the First or Second Settlement Demand or otherwise attempt a good faith settlement of the Williams Litigation Demand was negligent and resulted in the Excess Verdict and proximately caused damages to Medallion.

43. The negligence of AIG Claims and Carman, while acting on behalf of Granite State, has proximately caused damages to be incurred by Medallion, including at least the amount of $200,000.00 it was forced to contribute to finally effectuate a settlement of the Williams Litigation; $167,873.00 it was forced to spend to hire independent counsel to protect its interests, after it became clear that AIG Claims was refusing to do so; and an amount of not less than $119,511.00 in the time and expense its employees and owners have been forced to incur in an effort to protect Medallion from AIG Claims and Carman's unreasonable conduct.

44. In addition, Medallion has and will in reasonable probability continue to suffer consequential damages in the future as a result of having to suspend or postpone its business expansion plans during the pendency of the Williams Lawsuit because of the lingering possibility of a verdict in excess of the policy limits being enforced against Medallion.

45. Medallion's damages resulted from the gross negligence, malice, or actual fraud of AIG Claims or Carman, acting on behalf of Granite State, which entitles Medallion to exemplary damages under the Texas Civil Practice & Remedies Code section 41.003(a).

## COUNT II: VIOLATIONS OF THE TEXAS INSURANCE CODE
**(Against Defendants AIG Claims, Inc., Granite State Insurance Company, and Jay Carman)**

46.     Defendants AIG Claims, Granite State and Carman engaged in false, misleading, or deceptive acts, or practices in violation of Section 541.060(a) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insured's liability had become reasonably clear. Defendants also violated Section 541.060(a)(7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim. In fact, Defendants rejected two offers to settle Williams' claim within policy limits without conducting a reasonable investigation. As described above, the subject insurance policy covers the claim made in the Williams Litigation; the insured's liability was reasonably clear at the time of the settlement offers; the claimant Williams made a proper settlement demand which would have resolved completely the insured's liability within the policy limits; and the demand terms were such that an ordinarily prudent insurer would have accepted the settlement offer. Defendants' conduct in this regard frustrated the purposes of the Policy and Plaintiff's reasonable expectations thereunder.

47.     Defendants' conduct was a producing cause of actual damages to be incurred by Medallion, including at least the amount of $200,000.00 it was forced to contribute to finally effectuate a settlement of the Williams Litigation; $167,873.02 it was forced to spend to hire independent counsel to protect its interests, after it became clear that Defendants were refusing to do so; and an amount of not less than $119,511.00 in the time and expense its employees and owners have been forced to incur in an effort to protect Medallion from Defendants' unreasonable conduct. In addition, Medallion has and will in reasonable probability continue to suffer consequential damages in the future as a result of having to suspend or postpone its business

expansion plans during the pendency of the Williams Lawsuit because of the lingering possibility of a verdict in excess of the policy limits being enforced against Medallion.

48.  Defendants acted knowingly in committing these acts and practices, in that Defendants knowingly ignored the advice of counsel retained to represent Medallion, as well as requests made on behalf of the insureds to resolve the Williams Litigation by accepting the claimant's settlement demands. Therefore, Plaintiff seeks the imposition of trebled damages under Section 541.152(b) of the Texas Insurance Code, together with its attorney fees, expenses and costs of court.

### COUNT III: BREACH OF CONTRACT
**(Against Defendant Granite State Insurance Company)**

49.  The insurance policy covered and was intended to protect Medallion from the risk of liability for claims such as were asserted in the Williams Litigation. Under the specific terms of the Policy, Granite State agreed and had the duty to defend its insured, including Medallion and Smith, in relation to the Williams Litigation. The obligation to defend implies a contractual duty that the Defendants Granite State exercise reasonable care in the management of the defense of its insureds, including conducting an adequate investigation of both liability and potential damages, performing a reasonable assessment of the potential liability of the insureds, taking whatever steps are necessary to provide the insureds with the best defense available under the facts. The duty to defend requires the Defendant Granite State to act as a reasonable and ordinarily prudent person would in managing his own affairs, including accepting a demand within policy limits which is reasonable and should be accepted to protect the insureds from potential liability.

50.  Granite State and its representatives breached its contractual obligations by failing to adequately manage Medallion's defense, failing to perform a reasonable assessment of the potential liability of the insureds, and failing to ensure that expert testimony was obtained to rebut

the evidence offered by Williams at trial, both as to liability and damages, and failing to accept a settlement demand within policy limits which was reasonable and should have been accepted to protect the insureds from potential liability. The Defendant Granite State's breaches of these contractual obligations resulted in the Excess Verdict and were the cause in fact of the damages sustained by Medallion.

51. The breach of their contractual obligations by Granite State has proximately caused damages to be incurred by Medallion, including at least the amount of $200,000 it was forced to contribute to finally effectuate a settlement of the Williams Litigation; $167,873.00 it was forced to spend to hire independent counsel to protect its interests, after it became clear that Granite State was refusing to do so; and an amount of not less than $119,511.00 in the time and expense its employees and owners have been forced to incur in an effort to protect Medallion from Granite State's unreasonable conduct. In addition, Medallion has and will in reasonable probability continue to suffer consequential damages in the future as a result of having to suspend or postpone its business expansion plans during the pendency of the Williams Lawsuit because of the lingering possibility of a verdict in excess of the policy limits being enforced against Medallion.

52. As a result of the breach of their contractual obligations by Granite State by and through its representatives, Plaintiff has been required to hire counsel to pursue these claims, and Plaintiff has incurred, and continues to incur, fees and expenses. Plaintiff seeks to recover its attorney fees and expenses pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

**JURY DEMAND**

53. Plaintiff demands a trial by jury.

## **PRAYER**

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

a. That Plaintiff be awarded judgment against Defendants for actual damages, statutory trebled damages and punitive damages;

b. That Plaintiff be awarded its necessary and reasonable attorney's fees pursuant to Sections 38.01 et seq. of the Texas Civil Practice and Remedies Code and Section 541.1529(a)(1) of the Texas Insurance Code;

c. That Plaintiff be awarded prejudgment interest at the lawful rate until judgment and post-judgment interest at the lawful rate; and

d. That Plaintiff be awarded its costs of court and any other relief, at law or in equity to which plaintiff may be shown to be justly entitled.

        Respectfully submitted,

*/s/ Carl R. Roth*

Carl R. Roth
cr@rothfirm.com
Texas Bar No. 17312000
Amanda A. Abraham
aa@rothfirm.com
Texas Bar No. 24055077
Todd W. Smith
ts@rothfirm.com
Texas Bar No. 24095575
**THE ROTH LAW FIRM, P.C.**
115 N. Wellington, Suite 200
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

GLENN A. PERRY
State Bar No. 15801500
Email: gap@sloanfirm.com
**Sloan, Hatcher, Perry, Runge, Robertson & Smith Law Firm**
101 East Whaley St.
Longview, Texas 75601
Telephone: (903)757-7000
Facsimile: (903)757-7574

**ATTORNEYS FOR PLAINTIFF MEDALLION TRANSPORT & LOGISTICS, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 17th day of May, 2018. Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Carl R. Roth*
CARL R. ROTH