IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MEDALLION TRANSPORT & LOGISTICS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 2:16-CV-01016-JRG-RSP |
| AIG CLAIMS, INC., GRANITE STATE INSURANCE CO., and JAY CARMAN, | § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

In this insurance case, Medallion Transport & Logistics, LLC asserts three causes of action: (1) breach by Granite State of its duty under *Stowers* to settle a third party claim; (2) a violation of the Texas Insurance Code by all Defendants; and (3) breach of an insurance contract against Granite State. Second Am. Compl [Dkt. # 62] at 10–14. Defendants move the Court for summary judgment on all of Medallion's claims. Defs.' Mot. for Summ. J. [Dkt. # 47]. For the reasons that follow, the motion should be **GRANTED IN PART.**

## I.    BACKGROUND

### A.    The Parties

Medallion is a North Carolina limited liability company with its principal place of business in Mooresville, North Carolina. Joint Pre-Trial Order [Dkt. # 75] at 7. Defendant

AIG Claims, Inc. is a subsidiary and the claims servicing company of American International Group, Inc.'s property casualty insurance product lines. *Id.* Defendant Granite State Insurance Company is a fire and casualty company, organized under the laws of the State of Illinois, with its principal place of business in New York. *Id.* at 8. Defendant Jay Carman was an AIG Claims employee with the title "Complex Director." *Id.* at 8, 9. At all times material to this case, AIG Claims and Carman were acting on behalf of Granite State. *Id.* at 8.

### B.    The Williams Litigation

In April 2011, Brandi Williams was driving when her vehicle was struck by a long-distance tractor-trailer carrying cargo for Medallion. *Id.* That same day, Medallion provided notice of the accident to Granite State. *Id.* At the time of the accident, Granite State insured Medallion for up to $2 million of liability. *Id.* Granite State accepted coverage for the accident two days later. *Id.*

AIG Claims quickly concluded Medallion was likely to be found liable. By August 2011, AIG Claims had determined that Medallion's driver was primarily at fault for causing the accident and paid 90% of Williams's property damage. *Id.* at 10. AIG Claims later entered activity notes commenting: "Liability: 90% against the insured for failing to yield the ROW and for making an illegal U-turn." *Id.*

In February 2012, Williams sued Medallion to recover for personal injuries sustained in the accident. *Id.* at 9. Williams alleged that Medallion was negligent in the super-

vision and training of the driver. *Id.* Williams also alleged the accident caused severe injuries to her spine, which led to numerous medical procedures, hospitalizations, and a spinal surgery. *Id.* Williams claimed she could never return to nursing, her chosen profession. *Id.* at 9–10.

Medallion reported the suit to Granite State, which hired legal counsel to defend Medallion. *Id.* at 9. By reason of an arrangement between Granite State and AIG Claims, AIG Claims and Carman had authority to act as Granite State's agents in managing the Williams litigation on Granite State's behalf. *Id.* This included authority to adjust the Williams claim, including with respect to the investigation, evaluation, hiring counsel, and managing the defense, and potential resolution and settlement of the Williams claim. *Id.* By reason of this arrangement between Granite State and AIG Claims, all duties and obligations of Granite State to Medallion were to be performed by AIG Claims. *Id.*

In the three months before trial, it became clearer that Medallion was likely to lose. On September 24, 2013, AIG Claims's adjuster acknowledged the "case has a potential for serious exposure." *Id.* at 10. On October 2, 2013, AIG Claims informed Medallion that Williams had submitted $122,231.75 in medical bills, had not worked since the accident, and showed very well in her deposition in that she was articulate and, as a registered nurse, able to describe her injuries well. *Id.* at 10.

On October 17, 2013, AIG Claims received a first *Stowers* demand from Williams's counsel. *Id.* The demand included an offer to settle for $2 million, an amount within the liability limits of Medallion's insurance policy with Granite State. *Id.* at 10–11.

On October 21, 2013, Medallion's defense counsel (hired by AIG Claims) prepared an evaluation of the case at AIG Claims's request. *Id.* at 11. That evaluation noted the collision was a severe impact, this was a serious case, there was no chance of a directed verdict or defense verdict, and the jury verdict could be $1.75 million to $3.3 million. *Id.* Defense counsel recommended that AIG Claims try to settle the case. *Id.*

After receiving the evaluation, Medallion hired counsel of its own, and at its own expense, to monitor the Williams litigation and the settlement discussions. *Id.* That attorney also encouraged AIG to accept the offer to protect Medallion from an excess verdict. *Id.* But AIG Claims rejected the first *Stowers* demand and made a counteroffer of $250,000. *Id.*

In early December 2013, AIG Claims and Carman received a second *Stowers* demand. *Id.* at 12. Two days later, AIG Claims and Carman rejected that demand on behalf of Granite State and made a counteroffer of $350,000, despite that by then Medallion was precluded from retaining any experts to testify at trial. *Id.*

The case was tried later that month. *Id.* After Williams's treating physician testified, AIG Claims and Carman offered $500,000 to settle the case. *Id.* Williams rejected the offer but advised Carman that the previous offer to settle all claims—i.e., the second *Stowers* demand—was still available. *Id.*

On December 19, 2013, the jury rendered a verdict of $3,865,101 against Medallion and its co-defendants. *Id.* Two months later, the trial court found Medallion and its co-defendants jointly and severally liable to Williams and entered a judgment of $3,865,101

plus pre-judgment interest and taxable costs. *Id.* at 13.

In April 2014, AIG Claims and Carman offered to settle Williams's claim for $1.975 million, the amount remaining under the policy, which Williams rejected. *Id.* The next month, Medallion appealed the Williams verdict. A year later, the appellate court reversed the trial court's judgment and ordered a new trial. *Id.*

Before the case could be retried, the parties settled Williams's claims for $3 million. *Id.* AIG paid $2.8 million towards the settlement. Medallion paid $200,000. *Id.*

## C.   Defendants' Motion for Summary Judgment

First, Medallion contends Granite State violated its *Stowers* obligation to settle a third-party claim after receiving a proper demand to do so. Second, Defendants allegedly breached Tex. Ins. Code § 541.060(a)(2)(A) by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear," and § 541.060(a)(7) by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Third, Medallion alleges Granite State breached its contractual obligations under the insurance policy.

Defendants' motion challenges all three claims. First, Defendants contend Medallion never had a mature *Stowers* claim because there was never a final judgment in the Williams litigation. As for the alleged statutory violations, Defendants argue Medallion has not and cannot present any evidence that Defendants engaged in unfair or deceptive acts or

practices, which Defendants contend is necessary for this cause of action. As for Medal-

lion's breach-of-contract claim, Defendants contend the evidence shows that Granite State

complied with its obligations under the policy.

## II.    APPLICABLE LAW

"A party may move for summary judgment, identifying each claim or defense—or

the part of each claim or defense—on which summary judgment is sought. The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The moving party has the initial burden of demonstrating the absence of a genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In resolving the

motion, the court should construe all facts and inferences in favor of the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.   DISCUSSION

### A.    Medallion's *Stowers* Claim

In Texas, "[t]he common law imposes a duty on liability insurers to settle third-party

claims against their insureds when reasonably prudent to do so." *Phillips v. Bramlett*, 288

S.W. 876, 879 (Tex. 2009) (citing *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d

544 (Tex. 1929)). "For the duty to arise, there must be coverage for the third-party's claim,

a settlement demand within policy limits, and reasonable terms 'such that an ordinarily

prudent insurer would accept it, considering the likelihood and degree of the insured's po-

tential exposure to an excess judgment.'" *Id.* (quoting *Am. Physicians Ins. Exch. v. Garcia*,

876 S.W.2d 842, 849 (Tex. 1994)). "When these conditions coincide and the insurer's neg-ligent failure to settle results in an excess judgment against the insured, the insurer is liable under the *Stowers* Doctrine for the entire amount of the judgment, including that part ex-ceeding the insured's policy limits." *Id.* (citing *Stowers*, 15 S.W.2d at 548).

Here, the parties dispute whether Medallion had a ripe *Stowers* claim. Relying on *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299 (Tex. 1988), Defendants contend that a *Stowers* claim only accrues when a judgment is final. Thus, because there was never a final judgment in the Williams litigation, no *Stowers* claim ever accrued. Me-dallion, however, asserts a *Stowers* claim accrues as soon as the trial court disposes of all the issues and the trial court's power to alter the judgment has ended. Pl.'s Resp. [Dkt. # 53] at 9 (citing *Street*, 756 S.W.2d at 301).

For a *Stowers* claim, "[t]he injury producing event is the underlying judgment in excess of policy limits." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1991); *see also Linkenhoger v. Am. Fidelity & Cas. Co.*, 260 S.W.2d 884, 887 (Tex. 1953) (concluding the insured "could not have maintained this present suit until such time as his liability and the extent thereof had been determined by a final judgment in the former case. Until then . . . the tort was not complete."). Thus, "[a] *Stowers* cause of action does not accrue until judgment in the underlying case becomes final." *Street*, 756 S.W.2d at 301; *see also, e.g.*, *In re Davis*, 253 F.3d 807, 809 (5th Cir. 2001) (concluding a debtor's bank-ruptcy estate did not include a *Stowers* claim because judgment in the underlying case never became final and no such claim ever accrued); *One Beacon Ins. Co. v. T. Wade Welch*

& *Assocs.*, No. H-11-3061, 2012 WL 2403500, at *5 (S.D. Tex. June 25, 2012) (concluding the *Stowers* claim was not ripe because there was no final judgment).

In *Street*, the Texas Supreme Court held "a judgment is final for the purposes of bringing a *Stowers* action if it disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, *and execution on the judgment, if appealed, has not been superseded.*" *Street*, 756 S.W.2d at 301 (emphasis added). Thus, the question is not just disposition of issues in the underlying litigation, but the ability of the third party to execute on the judgment. Execution was never an issue here, as Defendants filed both a supersedeas bond and a timely notice of appeal. Accordingly, Medallion's *Stowers* claim was never ripe and Defendants are entitled to judgment in their favor.

### B.      Defendants' Alleged Violation of Texas Insurance Code § 541.060(a)

In its second count, Medallion alleges all three defendants violated Tex. Ins. Code § 541.060(a)(2)(A) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim for which the insurer's liability had become reasonably clear—here, Medallion's liability to Williams. Medallion also alleges Defendants violated § 541.060(a)(7) by refusing to pay a claim without conducting a reasonable investigation of the claim.

In *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W. 253 (2002), the Texas Supreme Court held statutory liability under the language of § 541.060(a)(2)(A) requires the insured to show "that (1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement

demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it." *Rocor*, 77 S.W.3d at 262 (interpreting Tex. Ins. Code art. 21.21, which was the predecessor to § 541.060).  Unlike a *Stowers* claim, the statute requires a bad-faith component. *See* Tex. Ins. Code § 541.060(a)(2)(A) (defining "failing to attempt *in good faith* to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear" as "an unfair or deceptive act or practice" subject to liability (emphasis added)). There is no separate requirement of an unfair or deceptive act, as Defendants contend.  The statute defines the foregoing failure to act in good faith as an unfair or deceptive act.  That means, in the context of resisting a "no evidence" motion for summary judgment, the plaintiff must show some evidence that the insurer had no reasonable basis for denying or delaying payment or settlement of a claim. *See Universal Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997) ("An insurer breaches its duty of good faith and fair dealing when 'the insurer had no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact.'" (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (1994)); *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 317 (Tex. 1994) ("In this regard, the evidence presented, viewed in the light most favorable to the insured, must be such as to permit at least the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim.").[1]

---

[1] Although *Soriano* concerned an alleged breach of the duty of good faith in failing to settle a third-party claim, the Court noted it had never held that the duty of good faith applies to

Defendants argue Medallion has no evidence of any such bad faith. Defs.' Mot. [Dkt. # 47] at 13–14 (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847 (Tex. 1994)). Medallion responds the record provides "ample basis" for a jury to conclude that Medallion's liability was reasonably clear, and that a reasonable insurance carrier would have accepted a settlement offer to protect its insured from the possibility of an excess judgment. Pl.'s Resp. [Dkt. # 53] at 13–15.

Here, a reasonable jury could conclude Defendants had no reasonable basis for delaying settlement of the claim. Even before the first *Stowers* demand, AIG Claims's adjuster acknowledged the "case has a potential for serious exposure." Joint Pre-Trial Order [Dkt. # 75] at 10. Williams had not worked since the accident and showed well in her deposition. *Id.* After the first *Stowers* demand, Medallion's defense counsel noted the seriousness of the case, that there was no chance of a defense verdict, and that the jury verdict could be $1.75 million to $3.3 million. *Id.* at 11. Defense counsel also recommended to AIG Claims that it try to settle the case. *Id.* Medallion's independently retained attorney also encouraged AIG to accept the demand to protect Medallion from an excess verdict. *Id.* Still, AIG Claims and Carman rejected the second *Stowers* demand, even though Medallion was at that time precluded from proffering experts at trial. *Id.* at 12.

Notably, Defendants' motion offers no explanation as to why their approach was

the handling of third-party claims. *Soriano*, 881 S.W.2d at 317. Farmers, however, did not challenge the legal viability of Soriano's position, but simply claimed there was no evidence of bad faith. *Id.*

10 / 16

reasonable. Rather, Defendants recount the steps they took during the Williams litigation in fulfilling their contractual duty to defend. Medallion's statutory cause of action, however, is based on Defendants' unreasonably delaying *settlement*. Given the stipulated facts—especially in light of no explanation by Defendants as to why their behavior was reasonable—a jury could conclude Defendants unreasonably delayed in settling the claim. Accordingly, this part of Defendants' motion should be denied.

###        C.        Granite State's Alleged Breach of the Insurance Contract

In its third count, Medallion alleges Granite State breached its contractual obligations under the insurance policy in four ways. First, Medallion claims Granite State failed to adequately manage Medallion's defense. Second Am. Compl. [Dkt. # 62] ¶ 50. Second, Medallion claims Granite State failed to perform a reasonable assessment of Medallion's potential liability. *Id.* Third, Medallion claims Granite State failed to obtain expert testimony to rebut the evidence offered by Williams at trial, both as to liability and damages. *Id.* Finally, Medallion claims Granite State failed to accept a settlement demand within policy limits which was reasonable and should have been accepted to protect the insured from potential liability. *Id.*

According to Defendants, however, the policy simply requires the insurer to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." Policy No. TP9880498 01 Truckers Coverage Form [Dkt. # 47-2] at PageID 1063. Further, the policy gives Granite State

> the right and duty to defend any "insured" against a "suit" asking for such damages . . . . We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

*Id.* at PageID 1063–64. Medallion does not contest that these paragraphs provide the basis for Granite State's contractual obligations, but claims the policy

> implicitly requires the insurer to investigate and evaluate claims made against the insured as to both liability and damages, employ counsel to defend the insured in the event of a law suit, manage the litigation, and negotiate a fair and reasonable resolution where appropriate.

Pl.'s Resp. [Dkt. # 53] at 15–16.

Under Texas insurance law, "a breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract." *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). Thus, "[a]n insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018).

"Insurance policies are contracts and therefore are controlled by rules of construction applicable to contracts generally." *Columbia Cas. Co. v. CP Nat'l, Inc.*, 175 S.W.3d 339, 343 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Therefore, a court must construe the policy language at issue before determining whether summary judgment is appropriate.

"The construction of an unambiguous contract is a question of law for the court."

*Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). "A contract is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Rather, a contract is ambiguous only when "its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "If only one party's construction is reasonable, the policy is unambiguous and [a court] will adopt that party's construction." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). "But if both constructions present reasonable interpretations of the policy's language, [the court] must conclude that the policy is ambiguous." *Id.*

Here, the policy language concerning Granite State's rights and obligations is not ambiguous. Medallion urges the policy "implicitly requires the insurer to investigate and evaluate claims made against the insured as to both liability and damages," but the policy language clearly gives Granite State the right to investigate any claim as it considers appropriate. Similarly, Medallion urges the policy "implicitly requires" Granite State to "negotiate a fair and reasonable resolution," but the policy expressly gives Granite State the right to settle any claim as it considers appropriate. Medallion offers no good reason why the Court should change the plain and ordinary meaning of either provision or imply additional obligations. *See Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 90 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding "that, because the policy gives appellees the 'right to . . . settle these claims, proceedings or suits,' [the insured's] discretion in investigating and settling claims is not contractually limited"); *see also Dear v.*

*Scottsdale Ins. Co.*, 947 S.W.2d 908, 911, 913–14 (Tex. App.—Dallas 1997, writ denied) (concluding similar contract language "expressly and unambiguously permitted [the insurer] to investigate and settle any covered claims against [the insured] as [the insurer] deemed expedient"). Moreover, nothing in the policy suggests an "implicit requirement" for Granite State to manage the litigation. *See Univ. Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 748 (Tex. 2003) (noting "a covenant will not be implied simply to make a contract fair, wise, or just").

That leaves only Granite State's "right and duty to defend" against Williams's claims. So far as Granite State's "duty" is concerned, without additional language in the policy as to a particular standard of care, Granite State was only required to retain counsel for Medallion. As far as the "right" to defend, that includes the authority to make decisions normally vested in the insured as the named party in the case. *See Northern County Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004). But to the extent Medallion or its defense counsel disagreed with any such decision by Granite State—e.g., a decision not to retain a testifying expert for trial—Medallion's defense counsel could have urged Medallion to hire an expert notwithstanding Granite State's position and then sue Granite State to attempt to recoup the associated costs as necessary legal expenses. That Medallion did not elect that option does not lie at the feet of Granite State—at least not under Medallion's breach-of-contract claim concerning an insurance contract that gave Granite State the right to make the decision in the first place. *See State Farm Mut. Auto. Ins. Co. v. Traver*, 980

S.W.2d 625, 628 (Tex. 1998) ("[B]ecause the lawyer owes unqualified loyalty to the insured, the lawyer must at all times protect the interests of the insured if those interests would be compromised by the insurer's instructions. Under these circumstances, the insurer cannot be vicariously responsible for the lawyer's conduct." (citation omitted)).  The Supreme Court in *Traver* made this particularly clear by expressly rejecting its previous *dicta* from *Ranger County Mutual Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex. 1987), where it had stated that an insurer's duty to defend "includes investigation, preparation for defense of the lawsuit, trial of the case and reasonable attempts to settle."  S*ee also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 558 (5th Cir. 2004) ("A breach of the duty to defend entitles the insured to the expenses it incurred in defending the suit, including reasonable attorney's fees and court costs."). Here, the stipulated facts show Granite State performed its contractual obligations by retaining counsel through the successful appeal of the case. Accordingly, Defendants' motion should be granted as to Medallion's breach-of-contract claim.

## IV.    RECOMMENDATION

Defendants' Motion for Summary Judgment [Dkt. # 47] should be **GRANTED IN PART**. Specifically, the Court should **GRANT** summary judgment in Defendants' favor as to Medallion's *Stowers* and breach-of-contract claims, but **DENY** summary judgment as to Medallion's claims under Tex. Ins. Code § 541.060.

**Note**:  A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by July 2, 2018** bars that party from *de novo*

review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

      **SIGNED this 27th day of June, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE